**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| LVI FACILITY SERVICES, INC. | § | |
| | § | |
| V. | § | A-12-CV-672-LY |
| | § | |
| WATSON ROAD HOLDING CORP. | § | |
| D/B/A STUART B. MILLNER & ASSOC. | § | |

**REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
      UNITED STATES DISTRICT JUDGE

Before the Court is Defendant/Counter-Plaintiff's Motion to Dismiss Plaintiff's Second Amended Complaint (Dkt. No. 22); Plaintiff/Counter-Defendant's Response to Defendant/Counter-Plaintiff's Motion to Dismiss (Dkt. No. 28); and Defendant/Counter-Plaintiff's Reply (Dkt. No. 33). The District Court referred the above motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, Local Rules for the Assignment of Duties to United States Magistrate Judges.

## I.   BACKGROUND

This case arises out of a commercial dispute between Plaintiff/Counter-Defendant LVI Facility Services, Inc. ("LVI") and Defendant/Counter-Plaintiff Watson Road Holding Corp. d/b/a Stuart B. Millner & Associates ("SBMA"). The parties' business relationship stems from Austin Energy's decision in 2007 to shut down and decommission the Holly Street Power Plant in Austin, Texas. Dkt. No. 17, ¶ 5 [hereinafter Second Amended Compl.]. This meant that the plant needed to be dismantled and all equipment, structures, hazardous chemicals, and waste removed from the

site.  *Id.*  In September, 2011, LVI entered into a subcontract with TRC Environmental Corporation

("TRC"), which had been selected as the general contractor by Austin Energy to decommission the

Plant.  *Id.* ¶ 6.  Under its agreement with TRC, LVI was to perform asbestos and lead abatement,

hazardous material removal, fluids management, decommissioning, concrete and steel structure

demolition, and asset recovery services for salvage and scrap.  *Id.*  As part of LVI's compensation,

TRC assigned to LVI the right to sell equipment and materials salvaged from the decommissioning

of the power plant.  *Id.*

    Subsequently, LVI contacted SBMA for assistance in selling the reusable equipment from the Plant.  *Id.* ¶ 9.  In the course of the discussions, SBMA submitted to LVI an Asset Investment

Recovery & Total Plant Deactivation Proposal ("Proposal"), which contained information on the

services SBMA was proposing it could provide to LVI   Dkt. No. 22 at 3.  On December 1, 2011,

the parties entered into an Auction/Liquidation Contract ("Contract") under which SBMA agreed

to help LVI sell reusable equipment and other assets from the Holly Street Power Plant.[1]  Second

Amended Compl. ¶ 11.  The Contract provided SBMA the exclusive right to sell the assets from

December 1, 2011, through June 1, 2012, in a manner determined by SBMA.  Dkt. No. 22, Exh. 1

at 1 [hereinafter Contract].  On March 13 and 14, 2012, SBMA conducted a live public auction in

Travis County.  Second Amended Compl. ¶ 15.  However, as a result of disagreements over the

---

[1] LVI failed to attach a copy of the parties' Contract or the Proposal to its Second Amended Complaint.  Dkt. No. 17.  However, SBMA attached the Contract and the Proposal to its Motion to Dismiss as Exhibit 1.  Because LVI's Second Amended Complaint clearly refers to the Contract as well as the Proposal and both documents are obviously central to LVI's claims, the Court will consider the documents in their entirety.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000) (trial court may consider documents attached to a motion to dismiss when the documents are referred to in the complaint and are central to the plaintiff's claims); *see also Kane Enter. v. MacGregor (USA), Inc.*, 322 F.3d 371, 374 (5th Cir. 2003).

proceeds from the sale as well as the parties' respective obligations and rights under the Contract, no further sales occurred during the remainder of the contract period. *Id.*; Dkt. No. 22 at 4.

Shortly thereafter, in June, 2012, LVI filed a petition in Texas state court, alleging breach of contract and fiduciary duty against SBMA. Dkt. No. 22 at 1. SBMA removed the case to this Court based on diversity of citizenship. *Id.* In its Second Amended Complaint, LVI asserts seven causes of action against SBMA: (1) breach of contract; (2) breach of fiduciary duties; (3) fraudulent inducement and fraud; (4) fraud by nondisclosure; (5) negligent misrepresentation; (6) breach of express warranty for services sold; and (7) violations of the Deceptive Trade Practices Act. Second Amended Compl. ¶¶ 17–54. Generally, LVI complains that SBMA failed to comply with its obligations under the parties' agreement and that SBMA made numerous material misrepresentations to LVI about SBMA's services, resulting in substantial damages. *Id.*

SBMA moves to dismiss the Second Amended Complaint for failure to state a claim and failure to plead fraud with particularity. Dkt. No. 22 at 2. SBMA argues that LVI's Second Amended Complaint improperly expands the scope of the instant case to include breaches of provisions that are not found in the Contract. *Id.* at 1. More specifically, SBMA contends that LVI's allegations relating to fraud should be dismissed because LVI has failed to plead fraud with particularity as required by FED. R. CIV. P. 9(b). *Id.* at 2. Additionally, SBMA submits that LVI's fraud claims should be dismissed because they are barred by the independent injury doctrine and the alleged misrepresentations are not actionable as fraud, warranties, or deceptive practices. *Id.*

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule

12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008).  To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal quotation marks and ellipsis omitted).  Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action.  *See id.* at 555 & n. 3.  Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. *See Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

4

A motion to dismiss pursuant to FED. R. CIV. P. 9(b) tests the factual sufficiency of the plaintiffs' allegations. *See Tel–Phonic Services, Inc. v. TBS International, Inc.*, 975 F.2d 1134, 1138 (5th Cir.1992). The rule provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Pleading fraud with particularity in requires "[a]t a minimum. . .the particulars of time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Tel–Phonic Services, Inc.*, 975 F.2d at 1139; *see also Benchmark Elec., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 724 (5th Cir. 2003); *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).

## III.  ANALYSIS[2]

### A.    Breach of Contract

In a diversity case such as this one, the court must apply state substantive law. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Ashland Chem. Inc. v. Barco Inc.*, 123 F.3d 261, 265 (5th Cir. 1997). To prevail on a breach of contract claim under Texas law, the plaintiff must establish the following elements: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach. *Lewis v. Bank of Am., N.A.*, 343 F.3d 540, 544–45 (5th Cir. 2003), *cert. denied*, 540 U.S. 1213 (2004); *Wright v. Christian & Smith*, 950 S.W.2d 411, 412 (Tex.App.– Houston [1st Dist.] 1997, no writ).

---

[2] The parties do not appear to dispute that Texas law governs the issues raised in the instant suit. Both parties cite to and formulate their arguments based on Texas case law. Consequently, the Court will evaluate LVI's Second Amended Complaint under Texas law.

LVI's breach of contract claim alleges that SBMA "materially breached the Contract by failing to utilize its asset recovery services inclusive of its Power Plant Deactivation program to sell the reusable equipment at Holly Plant to buyers looking for reusable equipment, maximize LVI's return and obtain the highest value for LVI's assets at Holly Plant." Second Amended Compl. ¶ 18. In particular, LVI states that SBMA materially breached the Contract because it failed to (1) appraise, inventory, and market LVI's assets at the power plant; (2) sell the assets for prices greater than their respective scrap value; (3) promptly pay the net sales proceeds to LVI; and (4) provide reconciliation statements, reports, and proof that the auction proceeds were deposited into a trust account. *Id.* ¶ 19. As a result of SBMA's breaches, LVI claims monetary damages of approximately $1,500,000.00. *Id.* ¶ 20.

SBMA argues that LVI's breach of contract claim should be dismissed because the alleged breaches are not based on any contractual provision and because LVI fails to allege that it performed or tendered performance under the Contract. Dkt. No. 22 at 5–6. To support its contention, SBMA submits that LVI's allegations are the result of its disappointment about the proceeds generated from the public auction in March, 2012, and are not based on contractual provisions. *Id.* at 5. In response, LVI argues that SBMA has failed to carry its burden because it only contends that "many" of the alleged breaches are not based on contractual provisions, thereby implicitly admitting some provisions of the Contract were breached by SBMA. Dkt. No. 28 at 5. Furthermore, LVI states that it has pleaded factual allegations which show it performed or tendered performance under the Contract. *Id.* at 5–6. Finally, LVI contends that in order to determine whether or not SBMA breached contractual provisions, the Court would need to interpret the Contract, which is a question of fact that should not be decided in a ruling on a motion to dismiss. *Id.* at 6–7.

After reviewing LVI's Second Amended Complaint, the Court will recommend that the District Judge grant in part and deny in part SBMA's Motion to Dismiss as it pertains to LVI's breach of contract claim. While better pleading practices would dictate that LVI should have explicitly stated that it had performed its obligations and duties under the Contract, the Court finds enough factual support in LVI's Second Amended Complaint to survive dismissal.[3] First, LVI does allege that it had the right to sell equipment and materials salvaged from the disassembly of the Holly Street Power Plant. Second Amended Compl. ¶ 10. Most importantly, LVI has alleged that SBMA conducted a public auction in March, 2012, to sell parts and equipment from the Holly Street Power Plant. *Id.* ¶ 15. The auction generated significant proceeds, although not to the extent LVI supposedly anticipated. *Id.* Without performance by LVI, it is difficult to see how the public auction could have occurred. Thus, viewing the March 2012 public auction in the light most favorable to LVI, the Court concludes that there are sufficient factual allegations in LVI's Second Amended Complaint to survive SBMA's Motion to Dismiss.

SBMA's contention that LVI's allegations are not based on provisions in the Contract requires a more critical inquiry. Dkt. No. 22 at 5–6. Here, the Court first notes that some of the alleged contractual breaches committed by SBMA are clearly based on contractual provisions. Even a quick review of LVI's Second Amended Complaint and the Contract, which both parties agree contains at least some of the terms of the parties' agreement, demonstrates that LVI has sufficiently

---

[3] Furthermore, even if the Court adopted SBMA's argument that LVI has failed to sufficiently plead that it had performed its obligations under the Contract, the appropriate remedy would be to give LVI the opportunity to cure this deficiency, not to dismiss the breach of contract claim altogether. As the Fifth Circuit has observed, "the motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982).

alleged a breach of contract claim based on the Contract's provisions.  For example, LVI alleges that SBMA failed to promptly pay LVI the proceeds from the auction.  Second Amended Compl. ¶ 19(e). LVI also charges that SBMA violated the Contract by not providing (or not doing so in an adequate manner) reconciliation statements and reports.  *Id.* ¶ 19(g).  Here, the Contract unambiguously states that SBMA is to provide LVI a reconciliation every thirty days, including a remittance on all cleared funds.  Contract ¶ 6.  Furthermore, according to the Contract, LVI would receive from SBMA a series of reports with buyers' information, assets sold, and money collected and dispersed to LVI. *Id.*  Although the Court makes no ruling on whether SBMA actually breached these provisions of the Contract, it is clear that LVI has, at the very least, alleged that SBMA has done so.  Thus, the Court cannot agree with SBMA that LVI's breach of contract claim should be dismissed in its entirety for alleging violations not contained in the Contract.  As such, the Court recommends that the district court **DENY** SBMA's motion with respect to LVI's allegations that SBMA failed (1) to promptly pay the proceeds from the public auction to LVI and (2) to provide reconciliation statements and reports (or did so inadequately).

However, several of the alleged contractual breaches committed by SBMA are not obviously based on contractual provisions.  For example, the Contract does not specify that SBMA is required to (1) appraise or inventory LVI's assets at the Holly Street Power Plant; (2) maximize the value of LVI's assets; (3) market LVI's assets to buyers looking to purchase power plant equipment that could be reused at industrial or power plants; (4) sell LVI's assets at a price greater than their respective scrap value; or (5) provide proof that the auction proceeds have been deposited into a trust account. *Compare* Contract *with* Second Amended Compl. ¶¶ 18, 19(a)–(c), (d), (f).  On this point, the parties' main dispute focuses on whether the Proposal constitutes part of the contractual agreement

between LVI and SBMA.  *See, e.g.*, Dkt. No. 28 at 6 (noting that SBMA agreed to perform its services in accordance with the Proposal); Dkt. No. 33 at 1–3 (emphasizing that SBMA's position is that the Contract sets forth the rights and obligations of the parties, not the Proposal).  As the parties' disagreement demonstrates, whether the Proposal constitutes part of the parties' final contract significantly impacts the scope of claims LVI may bring under a breach of contract claim.

In its Response, LVI attempts to persuade this Court that deciding whether the Proposal constitutes part of the parties' agreement would amount to the Court determining how the Contract should be interpreted.  Dkt. No. 28 at 6–7.  LVI further asserts that interpretation of the Contract would require the resolution of several fact issues, including whether the Contract is ambiguous and if so, whether parol evidence should be considered to resolve any ambiguities.  *Id.* at 7.  LVI's argument is confused, however.  The issue is not whether the Contract is ambiguous,[4] but whether two documents, the Contract and the Proposal in this case, should be read together as one contractual agreement to determine the rights and obligations of LVI and SBMA for the purposes of this business transaction.  Nowhere in LVI's Second Amended Complaint does it contend that the Contract, or any provisions contained therein, was ambiguous.  Instead, LVI simply states that SBMA materially breached the Contract by failing to (1) appraise and inventory LVI's assets at the Holly Street Power Plant; (2) maximize the value of LVI's assets; (3) market LVI's assets to buyers looking to purchase power plant equipment that could be reused at industrial or power plants; (4) sell

---

[4] LVI is wrong when it asserts that whether a contract is ambiguous is a question of fact.  As has been stated repeatedly by Texas courts, "[w]hether a contract is ambiguous is a question of law to be decided by the Court."  *Progressive Cnty. Mut. Ins. Co. v. Kelley*, 284 S.W.3d 805, 808 (Tex. 2009); *see also Milner v. Milner*, 361 S.W.3d 615, 619 (Tex. 2012); *Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004); *Coker v. Coker*, 650 S.W.2d 391, 394 (Tex. 1983).

9

LVI's assets for prices greater than scrap value; and (5) provide proof that proceeds from the public auction were deposited into a trust account.  Second Amended Compl. ¶¶ 18, 19(a)–(c), (d), (f).

Under Texas law, it is well-established that

instruments pertaining to the same transaction *may* be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other, and that a court may determine, as a *matter of law*, that multiple documents comprise a written contract.  In *appropriate* instances, courts may construe all the documents as if they were part of a single, unified instrument.

*Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (internal citations omitted) (emphasis added).  Courts examining and applying this principle under Texas law have considered whether the documents expressly refer to one another or are part of the "same transaction."  *See, e.g.*, *DT Apartment Grp., LP v. CWCapital, LLC*, No: 12–437, 2012 WL 6693192 at *22–23 (N.D. Tex. Dec. 26, 2012) (finding the Modification Agreement and the Forbearance Agreement should not be read together, in part, because they were not part of the same transaction); *Baylor Univ. Med. Ctr. v. Epoch Grp., L.C.*, 340 F.Supp.2d 749, 755 (N.D. Tex. 2004) (construing three separate agreements together when the instruments expressly refer to one another, thereby showing an intertwined relationship between the documents at issue); *Calce v. Dorado Exploration, Inc.*, 309 S.W.3d 719, 736–37 (Tex.App.—Dallas 2010, no pet.) (refusing to read a Confidentiality Agreement together with a Fee Agreement because the documents did not reference each other and were not part of the same transaction); *Woodhaven Homes, Inc. v. Alford*, 143 S.W.3d 202, 205 (Tex.App.—Dallas 2004, no pet.) (declining to read two contracts together because they concerned different pieces of property).  Although multiple documents regarding the same transaction may be considered together, the Texas Supreme Court has cautioned that "this rule is simply a device for

ascertaining and giving effect to the intention of the parties and cannot be applied arbitrarily."

*DeWitt Cnty. Elec. Co-op., Inc. v. Parks*, 1 S.W.3d 96, 102 (Tex. 1999).

Here, the Court finds as a matter of law that it is inappropriate to construe the Proposal as part of the Contract.  Although the Proposal and the Contract were related to the same transaction, they cannot be said to form one, unified agreement.  *See, e.g.*, *Miles v. Martin*, 321 S.W.2d 62, 66 (Tex. 1959) (concluding that even though a conveyance and mortgage were executed as parts of the same transaction, they could not be construed together to form one entire agreement).  Most importantly, the Contract makes no reference to the Proposal nor does the Contract incorporate any terms of the Proposal by reference.  In fact, the Contract expressly denies *any* reference to *any* other document, agreement, or understanding between the parties.  To this effect, the Contract contains an explicit integration clause, which states

> This Agreement constitutes the entire agreement between the parties and *supersedes all prior oral or written understandings and agreements*.  No changes of, modification of, or additions to this Agreement shall be valid unless the same shall be in writing and signed by [LVI] and SBMA.

Contract ¶ 21 (emphasis added).  This provision is not ambiguous.  It makes clear that the parties' entire agreement is contained within the Contract.  As such, the Court finds it inappropriate to construe the Proposal as part of the Contract.

Furthermore, there is no indication in the Proposal that it represented a contractual agreement between the parties.  Whereas the Contract clearly specifies the binding effect of the parties' assent to its terms and provisions, the Proposal does not.  Contract ¶ 20.  Rather, throughout the entire Proposal, the document refers to itself as a proposal and not as an agreement of any kind.  *See, e.g.*, Proposal at 4, 5, 16, 17, 31.  Additionally, the language used in the Proposal clearly contemplates

that the document is not the final agreement between the parties.  For example, the Proposal explicitly recognizes in the "Scope of Work" section that "the premise presented may be changed to create the final contract."  *Id.* at 17.  Given the clear language in the Contract and the lack of indication that both parties agreed to be bound by the terms of the Proposal, the Court declines to read the Proposal as part of the Contract.

As such, the Court recommends that the District Judge **GRANT** SBMA's Motion to Dismiss and **DISMISS** LVI's breach of contract claim to the extent that LVI bases its allegations on provisions not contained within the Contract, including allegations that SBMA failed to (1) appraise or inventory LVI's assets at the Holly Street Power Plant; (2) maximize the value of LVI's assets; (3) market LVI's assets to buyers looking to purchase power plant equipment that could be reused at industrial or power plants; (4) sell LVI's assets at a price greater than their respective scrap value; and (5) provide proof that the auction proceeds have been deposited into a trust account.  In particular, to the extent that LVI contends that the Contract contains provisions imposing obligations on SBMA to market LVI's assets to buyers looking to purchase reusable equipment, the Court is unpersuaded.  Paragraph 7 of the Contract does not expressly obligate SBMA to market LVI's assets to any specific type of buyer.  Rather, the Contract only uses permissive language, stating that "SBMA *may* advertise the sale of the Assets in its usual and customary manner and *may* prepare such promotional materials and utilize such marketing media as SBMA shall determine to be the most advantageous for the sale of the Assets."  Contract ¶ 7 (emphasis added).  In addition to the permissive rather than obligatory language, this provision fails to identify a particular group of buyers to whom SBMA was supposed to market LVI's assets.  In short, LVI has not pointed to, and the Court has not located, any provision of the Contract that imposes these obligations upon SBMA

12

and as such, cannot sustain a breach of contract claim based on this second group of allegations.  *See, e.g.*, *Highland Crusader Offshore Partners LP v. LifeCare Holdings, Inc.*, 377 Fed.Appx. 422, 426–27 (5th Cir. 2010) (affirming the district court's dismissal of a breach of contract claim where the contract's applicability to later amendments was not established by the contract's terms); *Mae v. U.S. Prop. Solutions, L.L.C.*, No. 08–3588, 2009 WL 1172711 at *2 (S.D. Tex. Apr. 28, 2009) (dismissing breach of contract claim where property owner failed to assert which provision of the loan was allegedly breached).

Finally, the Court rejects SBMA's assertion that *LVT*'s alleged violations of the Contract demonstrates its failure to plead performance or tendered performance.  *See, e.g.*, Dkt. No. 22 at 6. This argument rests on the premise that LVI actually breached the terms of the Contract, which is a question of fact.  However, the resolution of such questions of fact are not appropriate when ruling on a motion to dismiss.  *See, e.g.*, *McManaway v. KBR, Inc.*, 906, F.Supp.2d 654, 660 (S.D. Tex. 2012) (noting that courts do not resolve disputed fact issues when considering a 12(b)(6) motion).

Accordingly, the Court recommends that the District Judge **GRANT IN PART** and **DENY IN PART** SBMA's Motion to Dismiss as it relates to LVI's breach of contract claim.

## B.     Breach of Fiduciary Duties

LVI's breach of fiduciary duties claims allege that SBMA was retained as exclusive sales agent with regard to LVI's assets at the Holly Street Power Plant and as trustee of the trust account in which sales proceeds were to be deposited.  Second Amended Compl. ¶ 22.  LVI alleges that in this capacity, SBMA owed LVI certain fiduciary duties, including but not limited to

> the duty of good faith, fair dealing, loyalty and fidelity; the duty to fully disclose all material facts known to the trustee that might affect LVI's rights; the duty to account to LVI for all trust transactions; the duty to exercise reasonable care, diligence and

13

judgment in performing its asset recovery services; the duty to properly manage, supervise and safeguard trust funds; the duty to protect the value of LVI's assets at Holly Plant so as to maximize the return on the sale of such assets; and the duty to obey LVI's instructions to market and sell certain of LVI's assets at Holly Plant to buyers that were interested in purchasing the certain assets as reusable equipment and not as scrap metal and materials.

*Id.* ¶ 23.  In the course of the parties' business relationship, LVI asserts that SBMA violated some, if not all, of these fiduciary duties by failing to (1) pay LVI its proceeds from the public auction; (2) provide reports to LVI concerning the sales of its assets at Holly Street Power Plant; (3) exercise reasonable care in conducting its asset recovery services; (4) maximize and obtain the highest value for LVI's assets at the Holly Street Power Plant; (5) properly market LVI's assets to potential buyers; and (6) inform LVI about the buyers attending the public auction.  *Id.* ¶ 24.  LVI claims damages under the Contract of approximately $500,000 and lost profits in excess of $1,000,000.00.  *Id.* ¶ 25.  In addition, LVI seeks an accounting of the trust account set up for the public auction, forfeiture of all fees collected or to be collected, and a disgorgement of all profits obtained by SBMA.  *Id.* ¶ 26.

In moving for a dismissal of LVI's breach of fiduciary duties claim, SBMA contends that it did not owe LVI any fiduciary duties because it was not LVI's agent, but an independent contractor, and because LVI has not alleged any facts to support its allegation that SBMA breached its fiduciary duty as a trustee.  Dkt. No. 22 at 7–9.  SBMA points the Court to the Contract, arguing that it provided SBMA extensive control and discretion over its conduct.  *Id.* at 7.  Aside from these factors, SBMA further notes that LVI cannot establish an informal fiduciary relationship because there was no long-standing relationship of trust and confidence between the parties.  *Id.* at 9.  In response, LVI contends that the Contract language demonstrates that SBMA was LVI's agent and trustee, thereby owing LVI certain fiduciary duties.  Dkt. No. 28 at 7–10.  LVI submits that it

14

retained control over certain aspects regarding the sale of its Holly Street Power Plant assets.  *Id.* at 8–9.  Furthermore, LVI emphasizes that should there be any question regarding whether SBMA was LVI's agent and fiduciary, such questions should be reserved for the fact finder.  *Id.* at 10.

The Court will recommend denial of SBMA's Motion to Dismiss these claims.  Under Texas law, "[t]he elements of a breach of fiduciary duty claim are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached his fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant."  *Jones v. Blume*, 196 S.W.3d 440, 447 (Tex.App.—Dallas 2006, pet. denied).  "An agency relationship creates, as a matter of law, a fiduciary relationship."  *See Harding Co. v. Sendero Res., Inc.*, 365 S.W.3d 732, 742 n.4 (Tex.App.—Texarkana 2012, no pet. h.).  In this case, LVI's Second Amended Complaint clearly alleges facts which, if taken as true, satisfy the second and third elements of a breach of fiduciary duty claim.  For example, LVI asserts that SBMA failed to exercise reasonable care, diligence, and judgment in performing its asset recovery services.  Second Amended Compl. ¶ 24.  As a result of these actions and others, LVI contends that it suffered significant monetary damages.  *Id.* ¶ 25.

As to the first element, the parties do not appear to disagree that *if* an agency relationship existed between LVI and SBMA, SBMA *would* have owed LVI certain fiduciary duties.  Rather, the parties' dispute whether there was an agency relationship between LVI and SBMA in the first place.  Dkt. No. 22 at 7–8; Dkt. No. 28 at 7–10.  In particular, the parties disagree on the level of independence SBMA had in performing its services.  Dkt. No. 22 at 7; Dkt. No. 28 at 8.  However, "[w]hether an agency relationship exists is usually a question of fact."  *Brown & Brown of Tex., Inc. v. Omni Metals, Inc.*, 317 S.W.3d 361, 377 (Tex.App.—Houston [1st Dist.] 2010, pet. denied); *see*

*also Coleman v. Klockner & Co. AG*, 180 S.W.3d 577, 587 (Tex.App.—Houston [14th Dist.] 2005, no pet.).  Where, as here, the facts are not fully developed or otherwise established, the issue of whether an agency relationship exists is a fact question that should not be decided by a court when ruling on a 12(b)(6) motion.  *See Harding Co.*, 365 S.W.3d at 742 n.4.  In this case, the relationship between LVI and SBMA and whether an agency relationship existed involves, to a large extent, their respective obligations under the Contract.  At this stage in the proceedings, there is not sufficient factual information for the Court to determine whether an agency relationship existed between LVI and SBMA.  In particular, there is no information, other than the parties' statements, about the level of control LVI retained when it agreed to use SBMA's asset recovery services.  Thus, it is inappropriate to dismiss LVI's breach of fiduciary duties claim at this time, and the Court will recommend that SBMA's motion be denied on this issue.

Additionally, the Court is unpersuaded by SBMA's contention that LVI has failed to sufficiently allege a breach of fiduciary duty based on SBMA's role as trustee.  The Contract clearly provides that proceeds from the sale of LVI's Holly Street Power Plant assets were to be paid into a trust account.  Contract ¶ 6.  LVI further alleges that proceeds from the public auction were to be deposited into a "trust account set up for the benefit of LVI," but that SBMA failed to pay the proceeds from the public auction to LVI.  Second Amended Compl. ¶¶ 13(h), 16(e).  As such, the Court finds that LVI has at least alleged SBMA owed certain fiduciary duties to LVI and that those duties were breached.

Accordingly, the undersigned recommends that the district court **DENY** SBMA's Motion to Dismiss as it pertains to LVI's breach of fiduciary duties claim.

**C.      LVI's Fraud-Based Claims**

        In its Second Amended Complaint, LVI also brings a series of fraud-based claims under

which it asserts that SBMA made certain material and false representations to LVI regarding the

quality, comprehensiveness, and benefits of SBMA's asset recovery services.   Second Amended

Compl. ¶¶ 28–32, 40–44.   LVI also argues that SBMA committed fraud by failing to disclose that

the buyers attending the public auction were only interested in purchasing scrap metal and not

reusable equipment.   *Id.* ¶¶ 33–39.   LVI contends that SBMA made these false representations with

the intention that LVI rely on these false statements when deciding whether to utilize SBMA's asset

recovery services.   *Id.* ¶¶ 29, 31, 43.   As to SBMA's alleged concealment of information, LVI

submits that SBMA deliberately hid information about the buyers coming to the public auction "to

keep LVI from knowing that [SBMA] was not keeping its promises to LVI and from canceling the

auction and Contract."   *Id.* ¶ 37.

        In moving for dismissal of LVI's fraud-based claims, SBMA generally asserts that LVI is

trying to improperly couch what is in essence a contract claim as a fraud claim.   Dkt. No. 22 at 9.

More specifically, SBMA argues that LVI cannot assert its fraud-based claims because the injuries

alleged by LVI are not independent from LVI's breach of contract claim and are consequently barred

by the independent injury rule.   *Id.* at 10–11.   Additionally, SBMA contends that even if LVI's

claims were not barred by the independent injury rule, LVI's fraud-based claims would still fail

because it has failed to plead fraud in accordance with the heightened standard set forth in Federal

Rule of Civil Procedure 9(b).   *Id.* at 11–12.   As to LVI's fraud by nondisclosure claim, SBMA argues

that LVI had no duty to disclose the facts alleged by LVI.   *Id.* at 15–16.   Finally, SBMA asserts that

the representations on which LVI bases its claims amount to nothing more than opinion or "puffery."

17

*Id.* at 13–15.  On the other hand, LVI submits that its fraud-based claims are (1) sufficiently pleaded; (2) not barred by the economic loss rule; and (3) based on SBMA statements that go beyond mere "puffery."  Dkt. No. 28 at 10–18.

### 1.    General Legal Standards for LVI's Fraud-Based Claims

As a general matter, "[s]tate law fraud claims are subject to the heightened pleading requirements of Rule 9(b)."  *Sullivan v. Leor Energy, LLC*, 600 F.3d 542, 550–51 (5th Cir. 2010). Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake."  The Fifth Circuit has stated that "[t]o plead fraud adequately, the plaintiff must specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."  *Id.* at 551 (internal quotations and citations omitted).

Next, although the parties use different terminology, the "independent injury" doctrine and the "economic loss rule" essentially refer to the same principle under Texas law.[5]  *McDaniel v. J.P. Morgan Chase Bank, N.A.*, No. 12–392, 2012 WL 6114944 at *7 (E.D. Tex. Dec. 10, 2012); *compare Simms v. Jones*, 879 F.Supp.2d 595, 599 (N.D. Tex. 2012) (explaining the independent injury rule under Texas law as "when the injury is only the economic loss to the subject of a contract, the action sounds only in contract") *with Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Serv., Inc.*, 894 F.Supp.2d 787, 798 (N.D. Tex. 2012) (explaining the economic loss rule under Texas law, stating

---

[5] Other district courts in this circuit have differentiated between the independent injury doctrine and economic loss rule. *See Eastman Chem. Co. v. Niro, Inc.*, 80 F.Supp.2d 712, 716 n.2 (S.D. Tex. 2000) (explaining the independent injury doctrine as the doctrine applicable when the plaintiff and defendant are in a contractual relationship with each other).  Because LVI and SBMA stand in a contractual relationship in this case, the Court will refer to this principle as the independent injury doctrine throughout this Report and Recommendation.

"where a defendant's conduct would give rise to liability only because it breaches the parties'

agreement, the plaintiff's claim ordinarily sounds only in contract."); *see also Jim Walter Homes,*

*Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986).  In Texas, this principle

> generally precludes recovery in tort for economic losses resulting from the failure of
> a party to perform under a contract.  That is, a duty in tort does not lie when the only
> injury claimed is one for economic damages recoverable under a breach of contract
> claim.  Thus, the rule restricts contracting parties to contractual remedies for
> economic losses associated with their relationship, even when the breach might be
> reasonably viewed as a consequence of a contracting party's negligence.  The focus
> of the rule is on determining whether the injury is to the subject of the contract itself.

*McDaniel*, 2012 WL 6114944 at *7 (internal quotations and citations omitted); *see generally*

*Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407, 415–18 (Tex. 2011) (explaining

the usage of the economic loss rule in Texas).  "[I]f a duty exists separately and independently of the

contract, a tort claim may also be asserted."  *Simms*, 879 F.Supp.2d at 599 (citing *Sw. Bell Tel. Co.*

*v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991)).  To "determine whether a claim can be brought as

a tort, consideration must be given to (1) 'the source of the defendant's duty to act (whether it arose

solely out of the contract or from some common-law duty) and (2) the nature of the remedy sought

by the plaintiff.'"  *Regus Mgmt. Grp., LLC v. Int'l Bus. Machines Corp.*, No: 07–1799, 2008 WL

1836360 at *6 (N.D. Tex. Apr. 24, 2008) (citing *Crawford v. Ace Sign, Inc.*, 917 S.W.2d 12, 13

(Tex. 1996)).  However, "[t]he burden is on the plaintiff to establish evidence of an independent

injury."  *McDaniel*, 2012 WL 6114944 at *7.

Finally, the Texas Supreme Court has observed that "[p]uffery is an expression of opinion

by a seller not made as a representation of fact."  *Dowling v. NADW Mktg., Inc.*, 631 S.W.2d 726,

729 (Tex. 1982) (internal quotation omitted) (adopting the definition given by the Fifth Circuit in

*Gulf Oil Corp. v. Fed. Trade Comm'n*, 150 F.2d 106, 109 (5th Cir. 1945)).  To be actionable, the

representation must concern a material fact; "a pure expression of opinion will not support an action

for fraud." *Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995).

> Whether a statement is an actionable statement of fact or merely one of opinion often depends on the circumstances in which a statement is made. Relevant circumstances include the statement's specificity, the speaker's knowledge, the comparative levels of the speaker's and the hearer's knowledge, and whether the statement relates to the present or the future. Even an opinion may be actionable if: (1) it is intertwined with direct representations of present facts; (2) the speaker has knowledge of its falsity; (3) it is based on past or present facts; or (4) the speaker has special knowledge of facts that will occur or exist in the future.

*Matis v. Golden*, 228 S.W.3d 301, 307 (Tex.App.—Waco 2007, no pet.) (internal quotations and

citations omitted); *see also Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983).

### 2.    Fraudulent Inducement

With regard to its fraudulent inducement claim, LVI charges SBMA with making material

and false representations regarding (1) the prompt payment of the proceeds from the public auction

to LVI; (2) the preparation of a reconciliation report every thirty days; (3) the value SBMA would

obtain for LVI on its assets; (4) how SBMA would market LVI's assets; (5) the types of buyers

SBMA would bring to the public auction; and (6) the amount of money LVI would recover from the

sale of its assets. *Id.* ¶ 30.

> Under Texas law, the elements of a fraud claim are:

> (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.

*Coffel v. Stryker Corp.*, 284 F.3d 624, 631 (5th Cir. 2002) (citing *Formosa Plastics Corp., USA v.

Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998)).   "Fraudulent inducement,

however, is a particular species of fraud that arises only in the context of a contract and requires the

existence of a contract as part of its proof." *Haase v. Glazner*, 62 S.W.3d 795, 798 (Tex. 2001). To the extent LVI seeks to state a claim for fraudulent inducement based upon SBMA's failure to perform contractual obligations, "a breach must be coupled with a showing that the promisor never intended to perform under the contract." *Kevin M. Ehringer Enter., Inc. v. McData Servs. Corp.*, 646 F.3d 321, 325 (5th Cir. 2011) (citing *Spoljaric v. Percival Tours, Inc.*, 708 S.W.3d 432, 434 (Tex. 1986)).

The Court recommends that the district court deny SBMA's motion as to LVI's fraudulent inducement claim. First, LVI's Second Amended Complaint sufficiently pleads the circumstances of fraud under the Federal Rules. LVI asserts that the alleged misrepresentations were made during various communications, conference calls, and discussions SBMA had with LVI representatives. Second Amended Compl. ¶ 29. Furthermore, the Complaint presents enough facts for the Court to conclude that the conversations occurred in the last months of 2011. LVI states that it did not enter into an agreement with TRC until September, 2011. *Id.* ¶ 6. Only afterwards did LVI realize that much of the equipment at the Holly Street Power Plant could be sold as reusable industrial equipment and that LVI needed assistance in selling these parts. *Id.* ¶¶ 8–9. The Complaint further notes that LVI and SBMA agreed to the terms of the Contract on December 1, 2011. *Id.* ¶ 11. Moreover, while LVI does not specify precisely when and where these conversations took place, its factual and fraudulent inducement allegations, taken in their entirety, identify specific misrepresentations allegedly made by SBMA, upon which LVI relied to its detriment. Thus, although not pleaded with the utmost clarity, these allegations are sufficient to state a claim of fraud when the pleaded facts are viewed in a light most favorable to LVI.

Additionally, contrary to SBMA's assertion, LVI's fraudulent inducement claim is not barred by the independent injury doctrine under Texas law.  As the Texas Supreme Court held in *Formosa Plastics*, "[t]ort damages are recoverable for a fraudulent inducement claim irrespective of whether the fraudulent representations are later subsumed in a contract or whether the plaintiff only suffers an economic loss related to the subject matter of the contract."  960 S.W.2d at 47.  LVI's claim focuses specifically on the alleged misrepresentations made by SBMA that induced LVI to enter into the Contract.  In particular, LVI alleges that SBMA made material and false representations regarding the quality, comprehensiveness, and benefits of its asset recovery services, such as how SBMA would market LVI's assets and the types of buyers that would attend the public auction. Second Amended Compl. ¶ 30.  Consequently, the independent injury doctrine does not bar LVI from pursuing its fraudulent inducement claim.

The Court also concludes that SBMA's alleged misrepresentations amount to more than mere "puffery."  Many of the alleged misrepresentations cited in LVI's fraudulent inducement claim do not represent opinions, but promises of performing specific acts.  For example, LVI asserts that SBMA promised it would promptly pay the net sales proceeds from a public auction to LVI and would deposit those funds into a trust account.  *Id.* ¶¶ 30(a)–(b).  Such promises of performing specific actions cannot be deemed an "opinion."  *See, e.g.*, *Dowling*, 631 S.W.2d at 728–29 (finding that an advertisement promising a "firm buy back agreement" amounted to a specific act and did not constitute "puffing").  Several of the other alleged misrepresentations made by SBMA also promise specific acts, such as SBMA's representations that it would (1) provide LVI with a written reconciliation every thirty days; (2) market and sell certain LVI assets at the Holly Street Power Plant as reusable equipment; (3) bring in buyers willing to pay higher prices for used equipment; and (4)

22

attract qualified buyers from around the world to participate in the auction.   Second Amended Compl. ¶¶ 30(c), (e), (f), (h).  Accordingly, the Court also finds these allegations are more than mere "puffery" and can support a fraud claim.

Regarding SBMA's alleged representations that it would (1) maximize LVI's return from the public auction; (2) obtain the highest value for LVI's assets at the Holly Street Power Plant; (3) recover in excess of $1,000,000.00 from the sale of LVI's assets; and (4) recover a couple million dollars from the public auction, *id.* ¶¶ 30(d), (g), (i), (j), the Court also determines that such allegations survive dismissal at this stage.  As stated previously, even opinions may support a cause of action for fraud when such opinions are intertwined with the direct representations of fact. *Matis*, 228 S.W.3d at 307.  This set of alleged misrepresentations all relate to the value SBMA allegedly promised LVI would be obtained on the sale of its assets at Holly Street Power Plant.  This value is closely related to SBMA's purported representations that it would bring in particular types of buyers as well as market LVI's assets at Holly Street Power Plant as reusable equipment.  Accordingly, the Court disagrees with SBMA that LVI's fraudulent inducement claim should be dismissed based on grounds that SBMA's representations were mere "puffery."

However, the Court notes that LVI's fraudulent inducement claims may proceed only to the extent they are based on alleged misrepresentations that occurred prior to the commencement of the parties' contractual relationship.  Indeed, it is implicit that the alleged misrepresentations must have occurred prior to the Contract's execution in order for inducement to have occurred.  As such, LVI may proceed on its fraudulent inducement claim only as to statements which preceded the execution of the Contract.

23

3.       **Fraud by Nondisclosure**

LVI further argues that SBMA committed fraud by concealing or failing to disclose that the buyers attending the public auction were only interested in purchasing scrap metal and not reusable equipment.  Second Amended Compl. ¶¶ 33–39.  More specifically, LVI asserts that SBMA had a duty to disclose to LVI that the buyers attending the auction were not interested in purchasing plant equipment for reuse, but that SBMA deliberately concealed from LVI the type of buyers attending the public auction.  *Id.* ¶¶ 35, 37.  As a result of SBMA's nondisclosure, LVI alleges that it was unable to "take sufficient steps to ensure that the value of its assets at Holly Plant [were] maximized."  *Id.* ¶ 38.  Responding specifically to LVI's fraud by nondisclosure claim, SBMA contends that LVI cannot establish that SBMA had a duty to disclose the alleged facts and as a result, its claim must be dismissed.  Dkt. No. 22 at 15–16.

In Texas, fraud by nondisclosure is a subcategory of fraud because, "where a party has a duty to disclose, the non-disclosure may be as misleading as a positive misrepresentation of facts." *Schlumberger Tech. Corp. v. Swanson*, 959 S.W.2d 171, 181 (Tex. 1997).  Accordingly, "fraud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose." *United Teacher Assoc. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 567–68 (5th Cir. 2005). More specifically, the elements of a fraud by nondisclosure claim in Texas are:

> (1) the defendant failed to disclose facts to the plaintiff; (2) the defendant had a duty to disclose those facts; (3) the facts were material; (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts; (5) the defendant was deliberately silent when it had a duty to speak; (6) by failing to disclose the facts, the defendant intended to induce the

24

plaintiff to take some action or refrain from acting; (7) the plaintiff relied on the defendant's nondisclosure; and (8) the plaintiff was injured as a result of acting without that knowledge.

*7979 Airport Garage, LLC v. Dollar Rent A Car Systems, Inc.*, 245 S.W.3d 488, 507 n.27 (Tex.App.—Houston [14th Dist.] 2007, pet. denied). "Texas law recognizes a duty to disclose only where a fiduciary or confidential relationship exists." *Bay Colony, Ltd. v. Trendmaker, Inc.*, 121 F.3d 998, 1004 (5th Cir. 1997).

With regard to the source of any duty to disclose that existed here, LVI contends that SBMA had a fiduciary relationship with LVI, which imposed on SBMA a duty to make disclosures to LVI. Although this claim is pleaded with enough particularity to meet the requirements of Rule 9(b), that does not free it from the problem of violating the independent injury rule. As noted, if SBMA owed LVI a duty to disclose information to LVI, it owed that duty only as a result of the existence of a fiduciary relationship. Because the Contract imposes no such obligation on SBMA, the only way a claim for failure to disclose the information may proceed, consistent with the independent injury rule, is as part of the fiduciary duty claim LVI has raised. Indeed, LVI is already making this very claim. Second Amended Compl. ¶ 24(i). Phrased another way, because the alleged non-disclosure took place during the time the Contract was in place and was being performed, a fraud claim is barred by the independent injury rule. Thus, although LVI may complain of the nondisclosure in the context of its breach of fiduciary duty cause of action, the Court recommends that the District Judge **GRANT** SBMA's Motion to Dismiss on LVI's fraud by nondisclosure claim.

### 4.     Negligent Misrepresentation

Other than the legal theory, LVI's negligent misrepresentation claim is identical to its fraudulent inducement claim. *Compare* Second Amended Compl. ¶ 30 *with* ¶ 41. LVI contends that

SBMA "did not exercise reasonable care or competence in communicating its representations to LVI or . . . obtaining the information on which its representations to LVI were based." *Id.* ¶ 42. LVI alleges that as a result of these misrepresentations, it entered into the Contract with SBMA and allowed SBMA to serve as its auctioneer for LVI's assets at the Holly Street Power Plant, resulting in losses to LVI. *Id.* ¶ 44. Unlike the fraudulent inducement cause of action, negligent misrepresentation is not a claim that Texas courts ordinarily will permit to coexist with a contract claim, absent the plaintiff demonstrating that it has suffered an injury independent from the contract damages it is claiming. "Under the [independent injury doctrine], a plaintiff may not bring a claim for negligent misrepresentation unless the plaintiff can establish that he suffered an injury that is distinct, separate, and independent from the economic losses recoverable under a breach of contract claim." *Sterling Chem., Inc. v. Texaco Inc.*, 259 S.W.3d 793, 797 (Tex.App.—Houston [1st Dist.] 2007, pet. denied) (citing *D.S.A., Inc. v. Hillsboro Indep. Sch. Dist.*, 973 S.W.2d 662, 663–64 (Tex. 1998)). The narrow exception carved out by the Texas Supreme Court permitting benefit of the bargain measure of damages for fraudulent inducement claims does not extend to negligent misrepresentation claims. *D.S.A., Inc.*, 973 S.W.2d at 663.

Thus, whether LVI may recover damages from SBMA based on the contention that SBMA negligently misrepresented facts to LVI that induced LVI to enter into the Contract will depend on the damages LVI seeks to recover for that claim. In *D.S.A.*, the Texas Supreme Court set aside a portion of the judgment against the defendant that was based on a negligent misrepresentation cause of action because the measure of damages sought by the plaintiff, and awarded by the jury, was identical to that sought for the breach of contract claim. Here, the parties are only at the pleading stage, and the damages LVI has pleaded it has suffered for the two claims are not obviously identical.

26

On the breach of contract claim, LVI seeks "amounts due under the Contract (approximately $500,000.00) and lost profits in excess of $1,000,000.00," as well as equitable relief.  Second Amended Compl. ¶ 20.  On the negligent misrepresentation claim, LVI pleads only that it "has been injured and has suffered damages in an amount that exceeds the minimum jurisdictional limits of the Court."  *Id.* ¶ 44.  Thus, at this stage of the proceedings, LVI's negligent misrepresentation claim does not fail to state a claim recognized under Texas law.[6]

Likewise, LVI has pled the claim with sufficient particularity.  To state a claim for negligent misrepresentation under Texas law, the plaintiff must present the following four elements:

> (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) plaintiff suffers pecuniary loss by justifiably relying on the representation.

*Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005) (internal quotations omitted).  In this case, LVI's Second Amended Complaint has, at the very least, sufficiently alleged the four required elements for negligent misrepresentation under Texas law.  Second Amended Compl. ¶¶ 40–44.  LVI asserts that SBMA supplied numerous false representations about the quality, comprehensiveness, and benefits of its asset recovery services during the parties' discussions.  *Id.* ¶ 41.  Again, while LVI could have pleaded its cause of action with more specificity, the negligent misrepresentation allegations sufficiently identify the particular statements on which LVI allegedly

---

[6]If LVI is unable to demonstrate that it suffered damages aside from its economic losses on the Contract, then summary judgment on this claim might be appropriate.  RESTATEMENT (SECOND) OF TORTS § 552B, cmt. b (1977) (rejecting, "as to negligent misrepresentation, the possibility that, in a proper case, the plaintiff may also recover damages that will give him the benefit of his contract with the defendant"); see also *Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (agreeing with the scope of duty provided in § 552 of the Restatement (Second) of Torts).

relied upon in making its decision to enter into the Contract with SBMA.  When viewing the pleaded facts and allegations in a light most favorable to LVI, the Court finds that LVI has sufficiently pleaded its negligent misrepresentation claim.

Finally, for essentially the same reasons stated in Part III.C.2, the Court also finds SBMA's alleged misrepresentations amount to more than mere "puffery."   Accordingly, the Court recommends the District Judge **DENY** SBMA's Motion to Dismiss as it pertains to LVI's negligent misrepresentation claim.

### D.    Breach of Express Warranty for Services Sold

LVI's breach of express warranty claim is essentially based on the same set of alleged misrepresentations that LVI asserts it relied upon in deciding to utilize SBMA's services.  LVI alleges that SBMA represented that it was "uniquely qualified to sell the reusable equipment at Holly Plant so that LVI would maximize its return on the sale of its Holly Plant assets and recover in excess of one million dollars."  Second Amended Compl. ¶ 46.  Other specific examples provided by LVI generally concern SBMA's failure (1) to appraise, inventory, and market the assets; (2) to bring in buyers looking to purchase reusable equipment who would pay "top dollar" for such equipment; and (3) to maximize the proceeds from the sale of LVI's assets at the Holly Street Power Plant.  *Id.* ¶¶ 46(a)–(f).  The remainder of LVI's allegations focus on the quality of services SBMA represented it offered and the amount of expertise it had in providing asset recovery services.  *Id.* ¶¶ 46(g)–(k).  LVI asserts that it has not recovered anything from the sale of its assets at the Holly Street Power Plant and suffered damages as a result of SBMA's breach of express warranty.  *Id.* ¶¶ 47–48.

SBMA moves to dismiss LVI's breach of express warranty claim, arguing that the alleged misrepresentations only show LVI's disappointment with the results of one public auction halfway

28

through the Contract's duration.  Dkt. No. 22 at 16.  More specifically, SBMA contends that generalized goals stated in a proposal or in solicitation of work do not create actionable express warranties.  *Id.* at 16–17.  Alternatively, SBMA submits that LVI has simply failed to allege that SBMA's general statements about its services and qualifications were untrue or breached.  *Id.* at 17. In response, LVI argues that it has sufficiently stated a cause of action for breach of warranty, pointing to SBMA's alleged misrepresentations that it would advertise to particular buyers and maximize the proceeds obtained from any sale of LVI's assets.  Dkt. No. 28 at 19.  LVI further asserts that its Second Amended Complaint specifically stated that SBMA did not bring in the promised buyers and did not maximize the return on the sale of LVI's assets with proceeds less than $1,000,000.  *Id.*

A claim for breach of warranty is distinct from a claim of breach of contract.  *Med. City Dallas, Ltd. v. Carlisle Corp.*, 251 S.W.3d 55, 60 (Tex. 2008).  "But while an express warranty is a distinct claim, it is nonetheless a part of the basis of a bargain and is contractual in nature."  *Id.* "[A] breach of express warranty claim, like one for breach of contract, involves a party seeking damages based on an opponent's failure to uphold its end of the bargain."  *Id.* at 61.  Under Texas law, the elements of a claim for breach of warranty for services are

> (1) the defendant sold services to the plaintiff; (2) the defendant made a representation to the plaintiff about the characteristics of the services by affirmation of fact, by promise, or by description; (3) the representation became part of the basis of the bargain; (4) the defendant breached the warranty; (5) the plaintiff notified the defendant of the breach; and (6) the plaintiff suffered injury.

*Paragon Gen. Contractors, Inc. v. Larco Const., Inc.*, 227 S.W.3d 876, 886 (Tex.App.—Dallas 2007, no pet.) (citing *Sw. Bell Tel. Co. v. FDP Corp.*, 811 S.W.2d 572, 576–77 & n.3 (Tex. 1991)).

"[A]n express warranty claim also requires a form of reliance" by the party.  *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997).

    LVI's breach of express warranty claim fails as a matter law.  LVI has simply not alleged sufficient facts to show that the warranties at issue "became part of the basis of the bargain."  Although LVI fails to provide any citations for its quotations, it is clear that LVI again seeks to rely on representations made by SBMA in its Proposal, which were not part of the final contract between the two parties.  None of the allegations are even arguably contained within the parties' Contract.[7]  The Contract does not place an obligation on SBMA to appraise or inventory LVI's assets at the Holly Street Power Plant.  *Compare* Second Amended Compl. ¶¶ 46(a), (k)(1)–(2) *with* Contract.  Additionally, the Contract contains no provision detailing that SBMA would sell the reusable equipment at higher prices than what LVI had originally marketed or that LVI's recovery on its assets at the Holly Street Power Plant would be in excess of a certain amount.  *Compare* Second Amended Compl. ¶¶ 46(b), (f) *with* Contract.  LVI also fails to point to any contractual provision that arguably demonstrates that SBMA was obligated to have certain groups of buyers attend the public auction.  *Compare* Second Amended Compl. ¶¶ 46(d), (e) *with* Contract.  As such, the Court can find no evidence that the alleged "warranties" were incorporated into the Contract or "became part of the basis of the bargain."  *Compare* Second Amended Compl. ¶¶ 46(g)–(j) *with* Contract.

    To the extent LVI argues that its allegations relating to SBMA's advertisement of LVI's assets and the public auction are at least arguably within the final terms of the parties' agreement, the Court disagrees.  LVI asserts that SBMA represented it would (1) market the assets at Holly

---

[7] Even if LVI were granted leave to re-plead, it cannot overcome the fact that the Contract simply does not contain provisions which show that these alleged representations by SBMA formed part of the basis of the bargain for purposes of LVI's breach of express warranty claim.

Street Power Plant on a local, regional, national, and international level; (2) advertise the sale of LVI's Holly Street Power Plant assets to a worldwide customer base; and (3) perfect a plan ensuring the best marketing strategy is implemented.  *See* Second Amended Compl. ¶¶ 46(a), (c), (k)(3)–(4). However, as noted previously in Part III.A, paragraph 7 of the Contract only provides that "SBMA *may* advertise the sale of [LVI's] Assets in its usual and customary manner and *may* prepare such promotional materials and utilize such marketing media *as SBMA shall determine* to be the most advantageous for the sale of [LVI's] Assets."  Contract ¶ 7 (emphasis added).  This provision does not promise that SBMA would market the assets at Holly Street Power Plant on a local, regional, national, and international level, nor does it obligate SBMA to advertise the assets to a worldwide customer base.  Indeed, to the contrary, the clause reserved to SBMA the right to make decisions regarding the type of advertising it deemed appropriate for the sale.

Therefore, the Court recommends the District Judge **GRANT** SBMA's motion and **DISMISS** LVI's breach of express warranty claim.

E.      **Violations of the Deceptive Trade Practices Act**

Although LVI's Second Amended Complaint alleges violations of the Deceptive Trade Practices Act ("DTPA"), LVI notes in its Response to the motion to dismiss that it is dropping its DTPA cause of action.  Dkt. No. 28 at 1.  Consequently, the Court will recommend that the District Judge **GRANT** SBMA's motion on this issue and **DISMISS** LVI's DTPA claims.

## IV.  RECOMMENDATION

In summary, the Court **RECOMMENDS** that the District Judge **GRANT IN PART** and **DENY IN PART** Defendant SBMA's Motion to Dismiss in accordance with the discussion above.

31

## V.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made.  The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 1st day of October, 2013.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE